Elizabeth Moultray
385 Evans Riceville Rd
Belt, Mt, 59412-8404
(406) 564-0833
Plaintiff Pro Se



MONTANA 8th JUDICIAL DISTRICT COURT,
CASCADE COUNTY

| | |
|---|---|
| Elizabeth Lynn Moultray | ) **Cause No. CDV-26-66** |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) **First Amended Complaint** |
| vs. | ) |
| | ) |
| MemberCare A Brand of | ) |
| APCO Holdings LLC | ) |
| 6010 Atlantic Blvd, | ) |
| Norcross GA, 30071 | ) |
| c/o Registered Agent Solutions, Inc. | ) |
| 55 W. 14th St, Ste 101, | ) |
| Helena, MT 59601. | ) |
| | ) |
| Defendant. | ) |

COMES NOW the Plaintiff, Elizabeth Lynn Moultray, respectfully states the following:

I

## NATURE OF THE ACTION

1. This is a civil action for Breach of Contract, Breach of Implied Covenant of Good Faith & Fair Dealing, Montana Unfair Trade Practices and Consumer Protection Act (MCA § 30-14-103), and violation of the Magnuson–Moss Warranty Act (15 U.S.C. § 2301 et seq.).

6

**First Amended Complaint**                                                                 1

2.  Plaintiff seeks compensatory damages arising from Defendant's wrongful denial of a mechanical breakdown claim for a 2017 Nissan Titan S (hereafter referred to as "The Vehicle" or just "Vehicle").

3.  The mechanical failure initiated with an electronic control module failure with a subsequent failure of the Cylinder #5 coil pack; both of which are Covered Parts under the Agreement.

4.  These primary failures directly caused engine misfires and improper combustion, which resulted in physical scoring of Cylinder #5 and Cylinder #7 which led to damage of the catalytic converter which physically broke apart and plugged the downstream exhaust.

5.  Although a catalytic converter is typically a non-covered component, the Agreement explicitly provides coverage for non-covered parts when their failure is directly caused by the failure of a Covered Part (Sec. D.4 "Agreement" Exhibit A).

6.  Defendant denied coverage based on an alleged maintenance lapse regarding oil change intervals. Under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2302(c), and the FTC's implementing regulation, 16 C.F.R. § 700.10(c), a warrantor "cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to" the consumer's maintenance or service choices.

7.  The failures in this matter were caused by the failure of Covered Parts (ECM and Coil pack from cylinder #5), which triggered a scientifically-proven causal chain of fuel dilution, bore washing, and systemic contamination by magnetic and non-magnetic metal shavings throughout the engine, documented by the licensed repair facility. These mechanical failures have no causal connection to engine oil maintenance intervals, rendering Defendant's maintenance-based denial a pretextual attempt to avoid coverage.

8.  Plaintiff seeks full reimbursement for repair costs, as well as an award of reasonable attorney's fees and costs according to Magnuson–Moss Act (15 U.S.C. § 2310(d)(2)).

**First Amended Complaint** 2

## II

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to Art. VII, § 4 of the Montana Constitution and § 3-5-302, MCA, as the amount in controversy exceeds the jurisdictional limits of the justice courts.

2. This Court has personal jurisdiction over Defendant because Defendant is a foreign corporation authorized to do business in Montana, maintains a Registered Agent in Montana, and entered into a contract to be performed within this state.

3. Venue is proper in Cascade County pursuant to § 25-2-121, MCA, because Cascade County is the location where the repair to the The Vehicle was to occur, where the Plaintiff resides, and the Defendant is a foreign corporation.

## III

## STATEMENT OF FACTS

1. On 04/29/2025 Plaintiff and Defendant entered into a written contract (the "Agreement") for a vehicle Service contract to cover Mechanical breakdown or failure. A true and correct copy of the Agreement is attached as Exhibit A.

2. Under the terms of the Agreement, Defendant agreed to cover the costs of repairs for specific vehicle components in exchange for Plaintiff's payment of $3,756.00.

3. Plaintiff has performed all conditions, covenants, and promises required by the Agreement, including the timely payment of all sums due to Defendant.

4. The ECM failure (Diagnostic Trouble Code P0603) and resulting misfires (P0300) caused raw fuel to contaminate the oil ('fuel dilution') and wash the lubrication from the cylinder walls ('bore washing'), leading directly to the cylinder scoring found in cylinders #5 and #7. See Exhibit D (Email from Taylor's Auto Max dated March 13, 2026, confirming metal shavings throughout the engine, stretched timing chains, Faulty Variable Valve Timing/sprockets, and inability to warranty a short block repair).

5. Plaintiff followed all procedural requirements of the Agreement to initiate a claim, including taking the Vehicle to an authorized repair facility and not further driving the Vehicle so as to ensure no further damage; and authorized teardown of the Vehicle.

6. On or about 10/17/2025, Defendant denied Plaintiff's claim for coverage. Defendant's denial based on maintenance was a pretextual attempt to avoid coverage, as the documented mechanical failures (P0300/P0603) are the scientifically proven cause of the oil contamination and scoring, regardless of maintenance intervals. See Exhibit D.

7. Defendant's denial was improper because the warrantor failed to demonstrate that a lapse in maintenance caused the failure before denying coverage; no such causal relationship exists here.

8. As a result of Defendant's denial, Plaintiff is forced to go without a vehicle leading to potential charges for storing of Vehicle at the repair facility, and incurring costs for loss of use. Due to the Plaintiff's specific geographic and operational needs, specifically the requirement for a vehicle legally authorized for use on gravel roads, the capacity to seat four passengers, and the ability to haul water; comparable rental options are extremely limited. A suitable replacement vehicle currently costs $249.26 per day, plus $30.00 per day for unlimited mileage, and $25.00 per day for an additional driver, totaling $304.26 per day. See Exhibit C (Rental vehicle cost estimates showing $304.26/day for comparable 4WD truck authorized for gravel roads).

9. On January 27, 2026, Defendant denied coverage for the catalytic converter as 'ineligible', only to later claim it was covered in correspondence dated March 4, 2026. See Exhibit E (Email denying catalytic converter coverage, January 27, 2026) and Exhibit F (Email from Deby Burgi reversing denial and authorizing short block, March 4, 2026).

10. On 11/14/2025, Plaintiff sent a formal demand letter to Defendant requesting coverage. A copy of this demand is attached as Exhibit B.

**First Amended Complaint** 4

11. To date, Defendant has failed and refused to pay the full amounts due under the agreement. While Defendant issued a partial authorization for certain parts on November 24, 2025, over four months after the initial loss, this authorization was for insufficient components (a short block rather than the required long block) and did not include the necessary catalytic converter at that time. As of March 17, 2026, Defendant's ongoing failure to provide a complete and timely repair has resulted in a total deprivation of use of the vehicle for 245 days.

## LIST OF EXHIBITS

Exhibit A: Vehicle Service Contract dated April 29, 2025

Exhibit B: Demand Letter dated November 14, 2025

Exhibit C: Rental vehicle cost estimates showing daily rate of $304.26 for comparable 4WD truck

Exhibit D: Email from Josh Bunch/Taylor's Auto Max dated March 13, 2026, confirming metal shavings throughout engine, timing chain issues, VVT actuator problems, and inability to warranty short block repair

Exhibit E: Email from MemberCare Paralegal dated January 27, 2026, denying catalytic converter as 'ineligible'

Exhibit F: Email from Deby Burgi dated March 4, 2026, reversing denial, authorizing short block only, and offering $16,750.

## IV

## COUNT I: BREACH OF CONTRACT

1. Plaintiff incorporates by reference the allegations in paragraphs 1 through 11.

2. The Agreement constitutes a valid and binding contract between Plaintiff and Defendant.

3. Defendant materially breached the Agreement by failing to pay for covered repairs as required by the contract terms.

**First Amended Complaint**                                                                 5

4. Defendant further breached the contract by refusing to authorize a long block replacement. Taylor's Auto Max, the licensed repair facility, confirmed in writing that a short block is 'un-warrantable' due to systemic contamination from magnetic and non-magnetic metal shavings throughout the engine, stretched timing chains, and faulty variable valve timing actuators/sprockets. See Exhibit D. A repair that a licensed facility cannot stand behind is not a 'proper repair' under the Agreement. Authorizing a short block is an improper repair that fails to restore the vehicle to a functional, pre-loss condition.

5. As a direct and proximate result of Defendant's breach, Plaintiff has incurred substantial and mounting damages. As of March 17, 2026, the accrued damages for loss of use alone total $74,543.70. When combined with ongoing storage fees and other associated costs, Plaintiff's total damages now exceed $100,000.00

V

## COUNT II: BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

1. Plaintiff incorporates by reference the allegations in paragraphs 1 through 11 of the Statement of Facts and the allegations in Count I.

2. Defendant acted in bad faith by providing conflicting coverage determinations—denying the catalytic converter as 'ineligible' on January 27, 2026 while later claiming it was covered in correspondence dated March 4, 2026—solely to delay payment and frustrate the Plaintiff's rights. See Exhibits E and F. Furthermore, despite repeated requests, Defendant has refused to produce the independent inspector's report regarding the presence of metal shavings, which is in Defendant's possession and constitutes unreasonable investigation in violation of the implied covenant of good faith and fair dealing.

VI

## COUNT III: VIOLATIONS OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (MCA § 30-14-103)

1. Plaintiff incorporates by reference the allegations in paragraphs 1 through 11 and Counts I and II.

2. At all times relevant, Defendant was engaged in "trade" or "commerce" as defined by MCA § 30-14-102.

3. Defendant engaged in unfair or deceptive acts or practices by misrepresenting the terms of the Agreement and its coverage obligations to the Plaintiff.

4. Specifically, Defendant's denial of the claim based on an alleged maintenance lapse; despite having technical evidence that the mechanical failure was caused by a Covered Part (the ECM and Coil Pack); constitutes a deceptive practice designed to mislead the Plaintiff about their contractual rights.

5. Defendant's use of a pretextual maintenance technicality was a deceptive omission of the true cause of failure, intended to induce the Plaintiff into abandoning a valid claim. See Exhibit D.

6. Defendant's actions were unconscionable, as they took advantage of the technical complexity of the mechanical failure to avoid their clear contractual and statutory obligations.

7. As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiff has suffered an ascertainable loss of money or property, including the cost of repairs and loss of use of the Vehicle.

8. Pursuant to MCA § 30-14-133, Plaintiff is entitled to recover actual damages, or $500, whichever is greater, and the Court may, in its discretion, award treble damages and reasonable attorney's fees.

VII

COUNT IV: VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301 et seq.)

1. Plaintiff incorporates by reference the allegations in paragraphs 1 through 11 of the Statement of Facts and the allegations in Counts I, II, and III.

**First Amended Complaint**                                                                 7

2. The Agreement is a "written warranty" or "service contract" for a "consumer product" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(6) and 2301(8). The Vehicle is a consumer product normally used for personal, family, or household purposes.

3. The Defendant; MemberCare, A Brand of APCO Holdings LLC, is a "warrantor" or "supplier" under the Act.

4. The Plaintiff afforded the Defendant a reasonable opportunity to repair the defect or malfunction as required by the Act.

5. The Plaintiff's vehicle suffered a defect or malfunction, specifically the Electronic Control Module and Cylinder #5 ignition coil failures, which were "Covered Parts" under the Agreement.

6. The Defendant failed to provide a remedy, including repair, replacement, or refund, within a reasonable time and without charge, as required by 15 U.S.C. § 2304(a)(1).

7. The Defendant's denial of coverage based on an unrelated maintenance lapse is a violation of the Act, which prohibits warrantors from avoiding liability where a defect is unrelated to a consumer's maintenance choices (16 C.F.R. § 700.10(c)).

8. As a direct and proximate result of the Defendant's failure to comply with its obligations under the written warranty and the Magnuson-Moss Warranty Act, the Plaintiff has suffered damages, including repair costs, storage fees, and loss of use of The Vehicle.

9. Pursuant to 15 U.S.C. § 2310(d)(2), a consumer who prevails in an action under the Act may be awarded costs and reasonable attorney's fees.

VIII

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, MemberCare (APCO Holdings LLC), for the following:

**First Amended Complaint**                                                                          8

1. Compensatory Damages: For the full cost of the mechanical repairs to the Vehicle (parts and labor), estimated at $23,410.16, or the actual amount proven at trial.

2. Loss of Use Damages: Accrued at a rate of $304.26 per day from July 15, 2025, totaling $70,588.32 as of March 4, 2026, and continuing to accrue at the reasonable rental value of a comparable vehicle until a proper repair is completed. Pursuant to *Lenz Construction Co. V. Cameron*, 674 P.2d 1101 (Mont. 1984), the proper measure of loss of use damages is the reasonable rental value of a comparable vehicle for the period of time necessary for replacement, regardless of whether another vehicle is actually rented.

3. Storage Costs: For all storage fees incurred while the Vehicle remains at the repair facility due to Defendant's denial of coverage, totaling $8,575.00 (245 days at $35/day as of March 17, 2026), and continuing to accrue until repair is completed.

4. Treble Damages: Pursuant to MCA § 30-14-133, for an award of up to three times the amount of actual damages sustained, due to Defendant's unfair and deceptive trade practices.

5. Attorney's Fees and Costs: For an award of reasonable attorney's fees and the costs of this suit, as authorized by the Magnuson-Moss Warranty Act (15 U.S.C. § 2310(d)(2)) and the Montana Consumer Protection Act (MCA § 30-14-133).

6. Interest: For pre-judgment and post-judgment interest at the maximum rate allowed by Montana law.

7. Other Relief: For such other and further relief as the Court deems just and proper.

*(Your Signature)*

Elizabeth L Moultray
*(Print your name)*

03/17/2026
*(Date)*

**First Amended Complaint**                                                                    9

State of Montana : ss
County of _Cascade_____ )

_Elizabeth Lynn Moultray_ being first duly sworn, upon oath, deposes and says as follows: I am the Plaintiff in the foregoing Complaint. I have read the foregoing Complaint and the facts of the matter contained herein are true, correct and complete to the best of my knowledge and belief.

_Elizabeth Moultray_
Plaintiff

Signed and sworn to (or affirmed) before me this __17__ day of _March_, 20_26_.

HEATHER HAYES
NOTARY PUBLIC for the
State of Montana
Residing at
Great Falls, Montana
My Commission Expires
March 22, 2027

(Signature of notary)

_Heather Hayes_
(Printed name of notary public)

Notary public for the state of_____

Residing at: _____

My commission expires:
_____

**First Amended Complaint**                                                                 10

By looking at an email can a p...    what is the "reasonable rental...    2024 GMC CANYON AT4X AEV    +    Browse with AI

hatchadventures.com/rent-a-vehicle/2024-gmc-canyon-at4x-aev-edition/?vehicle_class_id=22&target_step=1&ssid=wKusWUNrs8

HATCH
ADVENTURES    VEHICLES ▾    RAFTS ▾    CAMPING PACKAGES    TRIP HUB ▾    COMPANY ▾    SHOP    Reserve Now

NEW RESERVATION

② ③ Feature ④ Just mer ⑤ options ⑥ Payments    ‹

## Selected Vehicle Class

### 2024 GMC Canyon AT4X AEV Edition

**$249.26**

$45,864.00 total for 184 Days

Excl. taxes & insurance(s)

Not Available - Contact Us

### Summary

Quote

**Pickup**
Saturday, Mar 07, 2026 @ 9:00 AM
Location: Hatch Adventures Office

**Return**
Monday, Sept 07, 2026 @ 9:00 AM
Location: Hatch Adventures Office

**2024 GMC Canyon AT4X AEV Edition**
184x Days:    $249.26  $45,864.00
                          $45,864.00

**Additional Insurance & Protection**
Windshield Coverage:    $250.00

**Services**
Additional Driver

Type here to search    3:19 PM

 Outlook

---

## RE: Tech details/warranty

---

**From** Josh Bunch <joshb@taylorsautogroup.com>

**Date** Fri 3/13/2026 10:27 AM

**To**   Elizabeth Moultray <lizgiggles@hotmail.com>

Good morning Liz,

We noticed both magnetic and non-magnetic metal shavings throughout the engine. We did not notice any scoring on the camshaft or other upper end components; however, it is very likely that there are metal shavings in oil passages that we cannot see from the severe scoring in the cylinders, as well as the damaged bearings. We also had severe timing issues from stretched timing chains and faulty variable valve timing actuators/sprockets. We would not be able to provide a warranty on the short block repair due to these other issues.

Thanks,
JB

---

**From:** Elizabeth Moultray <lizgiggles@hotmail.com>
**Sent:** Friday, March 13, 2026 10:13 AM
**To:** Josh Bunch <joshb@taylorsautogroup.com>
**Subject:** Tech details/warranty

Hey JB,

I'm still in the middle of this back-and-forth with the service plan company, and I was hoping you could help me out with a few technical details to back up our case for the long block.

Long Block vs. Short Block: Can you explain why a long block is the only way to go here? I'm specifically worried about all that metal debris being stuck in the heads and oil galleys.

The Metal: Were those shavings magnetic (like steel) or non-magnetic (like bearing material)? Also, would you be able to take any photos of the cut-open oil filter showing the junk inside?

Top End: Did you see any scoring or damage on the camshafts or other parts up top?

Warranty: This is the big one, if I were forced to go with their "short block" idea and reuse the old top end, would your shop even be able to warranty the engine?

I really appreciate all the help you've given me so far. I just want to make sure we're doing this repair the right way so I'm not back in the shop in 500 miles!

Sorry to be a bother again, but I can't thank you enough.

Sincerely,

Liz

**Outlook**

---

## Fw: Moultray, Elizabeth MCPCFB2A1436

---

**From** Elizabeth Moultray <lizgiggles@hotmail.com>

**Date** Wed 1/28/2026 2:27 PM

**To** John Moffitt <mtoffroader@gmail.com>

---

**From:** Cynthia Ryan <cryan@apcoholdings.com>
**Sent:** Wednesday, January 28, 2026 1:17:12 PM
**To:** Liz Moultray <lizgiggles@hotmail.com>
**Subject:** Re: Moultray, Elizabeth MCPCFB2A1436

Good Afternoon,

The Claims Department has reviewed the below email.

The Repair Facility did not demonstrate any mechanical failure that would support a long block replacement. The failure demonstrated was to the currently authorized repairs to the short block. The claim is not denied, rather authorized for all verified mechanical failures and associated labor, and is aligned with the TSB for this particular failure. The Repair Facility was informed that the authorization was for short block repair, and agreed during the phone call that they would submit an estimate for the short block repair.

At this time, no failure beyond the short block has been demonstrated and verified. If the Repair Facility would like to provide further information as to the failure to the long block, the claim can be re-evaluated. Please be advised that the current authorized amount can be applied as a contribution if desired.

Please let me know if you would like the Claims Department to contact the repair facility to discuss requirements for verification to the long block failure, or, in the alternative, if you would like to use the current authorization amount as a contribution.

Thank you,

## Cindy Ryan
Paralegal
Direct (614) 470-4736
cryan@apcoholdings.com
(Central Time Zone)



 Book time to meet with me



**From:** Liz Moultray <lizgiggles@hotmail.com>
**Sent:** Wednesday, January 28, 2026 9:43 AM
**To:** Cynthia Ryan <cryan@apcoholdings.com>
**Subject:** Re: Moultray, Elizabeth MCPCFB2A1436

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning,

I hope this message finds you well.

As previously discussed, I had hoped to avoid the necessity of initiating a lawsuit regarding my claim. However, I have little other recourse due to the lack of coverage provided by your claims department.

I have consulted with my repair facility, which has determined that both a long block and catalytic converter repair are required. I requested that they submit a detailed quote for these repairs to your claims department. My repair facility indicated that they sent said quote and were summarily declined coverage from your claim department, including the catalytic converter, despite being covered under Section D.4 of our Contract.

Additionally, it was brought to my attention that member's care would not cover the total costs incurred for labor.

In light of this situation, I kindly request a satisfactory response by Monday, February 2nd, 2026. Should I not receive a timely resolution, I will be compelled to engage a litigation attorney on that date.

Thank you for your prompt attention to this matter. I look forward to your immediate response.

Best regards,

Elizabeth Moultray

---

**From:** Cynthia Ryan <cryan@apcoholdings.com>
**Sent:** Tuesday, January 27, 2026 1:40:45 PM
**To:** lizgiggles@hotmail.com <lizgiggles@hotmail.com>
**Subject:** Re: Moultray, Elizabeth MCPCFB2A1436

Good Afternoon,

As discussed on our phone call, you stated that you are no longer represented by counsel and asked that I provide information directly to you about the claim.
I asked the Claims Department to review the file and it is determined that the Claims Department discussed the authorization with the Repair Facility. The Repair Facility was informed that the Nissan TSB (technical service

bulletin) on this particular failure recommended a short block repair. The Repair Facility acknowledged and agreed on this course of repair for the short block during the phone call with the Claims Department. The Repair Facility stated that they would be happy to repair the short block and would be sending an estimate for repairs.

As to the Cat Converter, this particular part is ineligible for coverage under the terms and conditions of the Contract as outlined in Section D.9.b.

Should you have any additional questions, please do not hesitate to contact me at the information below.

Sincerely,

**Cindy Ryan**
Paralegal
Direct (614) 470-4736
cryan@apcoholdings.com
(Central Time Zone)



⊡ Book time to meet with me

Outlook

---

**Elizabeth Moultray v. MemberCare a brand of APCO Holdings, LLC**

---

From Deby Burgi <dburgi@apcoholdings.com>

Date Wed 3/4/2026 9:27 AM

To   lizgiggles@hotmail.com <lizgiggles@hotmail.com>

Good morning Ms. Moultray,

I am writing to let you know that APCO Holdings, LLC is in receipt of the lawsuit you filed regarding coverage for the ECM, coil pack, engine, and catalytic converter. I reviewed your claim history and wanted to share my findings, as I am hopeful we can resolve your concerns amicably without the need for litigation or arbitration.

As of today, here is the status of each item:
- **ECM:** This was covered under your contract and has been paid.
- **Coil pack:** This repair has been authorized as eligible for coverage. We are currently waiting for the repair facility to submit the invoice. To help expedite the process, please ask the repair facility to send the invoice directly to Terry Smith at **tesmith@apcoholdings.com**. Terry is a Director in the Claims Department and is aware of your claim.
- **Engine replacement:** The engine replacement was authorized as eligible for coverage, and this information was provided to your repair facility on **November 24, 2025**. If the engine has been replaced, please have the repair facility send the invoice to Terry at the email above. If it has not yet been replaced, could you let me know the reason so we can assist?
- **Catalytic converter:** The initial request for the catalytic converter alone was denied, as it is not a covered part. However, once the repair facility informed us of the engine issue, we were able to approve the catalytic converter because it was damaged by a covered component. At this time, we have not received the invoice for this repair. Please ask your repair facility to contact Terry Smith—either by email or by phone at **470-731-6577**—to discuss the status.

Please let me know if you have any questions. I am optimistic that once the repair facility connects with Terry, we can move your claims forward efficiently.

Sincerely,

**Deby Burgi**
VP Legal, General Counsel

904.834.7021
dburgi@apcoholdings.com
153 Ft. Wade Rd. Suite 300
Ponte Vedra Beach, FL 32081

Exhibit   F





***NOTE:  This message and attachment(s) may contain information which is CONFIDENTIAL AND LEGALLY PRIVILEGED BY THE ATTORNEY-CLIENT AND/OR ATTORNEY WORK PRODUCT DOCTRINE.  The information contained herein is intended only for the individual or entity named in this message.   If you are not the intended recipient, please be aware that any disclosure, copying, distribution, or use of the contents of this information is STRICTLY PROHIBITED.  If you receive this message in error, please notify us by telephone at 1-800-548-1875 x8108 and then kindly DESTROY all messages and attachments. ***